| | |
|---|---|
| **UNITED STATES DISTRICT COURT** **SOUTHERN DISTRICT OF NEW YORK** | **AMENDED COMPLAINT** |
| -------------------------------------------------------------x | |
| JESSE ALSTON, | |
| Plaintiff, | **Case Number.: 1:24-cv-06444-NRB** |
| - against - | |
| NEW YORK CITY DEPARTMENT OF CORRECTIONS, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AMERICAN AIRLINES GROUP INC., AMERICAN EAGLE AIRLINES, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, JANE DOE #1 in her official capacity, JANE DOE #1 in her individual capacity, JOHN DOES #1 in his official capacity, JOHN DOE #1 in his individual capacity, JOHN DOES #2 - 5, | |
| Defendants. | |
| -------------------------------------------------------------x | |

Plaintiff, Jesse Alston, by his attorney, EZRA B. GLASER, Esq., complaining of the Defendants, respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States, including The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Fourteenth Amendment to the United States Constitution, as well as 42 U.S.C. § 1983.

2. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it presents federal questions under the Constitution and laws of the United States.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the Plaintiff's claims occurred within this district, including the actions and omissions of the Defendants during the Plaintiff's custody and transport within New York City.

1

**PARTIES**

4.    Plaintiff Jesse Alston is a resident of New York City, who was an inmate under the custody and control of the New York City Department of Corrections. Plaintiff suffers from a severe disability due to his lower limb amputations and other health ailments.

5.    Defendant New York City Department of Corrections ("NYC DOC") is a government agency responsible for the administration, management, and operation of New York City's jails and correctional facilities, including Rikers Island, where Plaintiff was detained. NYC DOC is also responsible for ensuring the health, safety, and well-being of all inmates under its custody, including providing necessary medical care and reasonable accommodations to individuals with disabilities.

6.    Defendant New York State Department of Corrections and Community Supervision is a government agency responsible for the administration, management, and operation of New York State jails, supervising parolees, and transportation parolees, remanded to custody, across state lines.

7.    Defendant Jane Doe #1 is a New York State parole officer employed by the New York State Department of Corrections and Community Supervision. At all relevant times, she was acting within the scope of her employment and under the color of state law.  Jane Doe #1 played a direct role in the transport of Plaintiff from Virginia to New York City and exhibited deliberate indifference to his serious medical needs.

8.    Defendant John Doe #1, whose name is currently unknown to the Plaintiff, is also employed by the New York State Department of Corrections and Community Supervision. At all relevant times, he was acting within the scope of his employment and under the color of state law. Defendant John Doe #1 was directly involved in the

transportation and handling of Plaintiff during his transfer from Virginia to New York City.

9.    Defendant AMERICAN AIRLINES GROUP INC. is a commercial airline that transports passengers to various destinations in the United States of America and abroad. Defendant AMERICAN AIRLINES GROUP INC. was transporting the Plaintiff from Richmond, Virginia to New York City, New York during the relevant time period herein.

10.    Defendant American Eagle Airlines is a subsidiary of AMERICAN AIRLINE GROUP INC. which operated the commercial flight transporting the Plaintiff at all relevant times herein.

11.    Defendant John Does #2-5, are medical personnel, who, upon information and belief, are employed by the New York City Health and Hospitals Corporation as medical personnel serving inmates and pre-trial detainees on Riker's Island.

12.    Defendant New York City Health and Hospitals Corporation is a publicly sponsored corporation that administrates certain hospital and healthcare facilities in the City of New York.

**STATEMENT OF THE FACTS**

**A. Background and Medical History**

13.    By way of background the Plaintiff, Jesse Alston, is a formerly incarcerated individual who was incarcerated at various New York State Prisons for approximately seventeen (17) years and eight (8) months beginning on September 29, 1998 as a result of his conviction for various crimes including Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree, and Grand Larceny in the Second Degree.

14.    The Plaintiff, Jesse Alston, was released from custody and placed on parole by the New York State Division of Parole on May 26, 2016.

15.   In December 2019, Plaintiff Jesse Alston stepped on a nail with his right foot while walking on a sidewalk in Brooklyn, NY, resulting in a chronic infection that ultimately led to the amputation of his right foot in March 2020 at Mt. Sinai Hospital in New York City.

16.   Despite the amputation, the infection persisted, causing severe pain and complications. Plaintiff continued to suffer from chronic infections, necessitating ongoing medical treatment.

17.   On or about July of 2021, the Plaintiff traveled to Charlottesville, Virginia via bus for purposes of obtaining medical care for his infected foot.

18.   On July 31, 2021, due to the worsening condition of his right leg, Plaintiff was admitted to UVA University Hospital in Charlottesville, Virginia, where a second amputation was performed. This procedure involved the removal of Plaintiff's right leg below the knee. The Plaintiff remained hospitalized until August 11, 2021, to recover from the surgery.

19.   On or about August of 2021, the Plaintiff, Jesse Alston, contacted the New York State Department of Corrections and Community Supervision and/or a Magistrate Judge for purposes of turning himself in for a parole violation associated with his failure to notify his Parole Officer that he had left the State of New York to seek medical treatment.

20.   On or about August of 2021, the Plaintiff, Jesse Alston, waived his right to contest extradition from Virginia to New York in connection with his Parole violation charge.

21.   Following his discharge from UVA University Hospital, the Plaintiff was detained in a Virginia jail until August 24, 2021, when New York State parole officers, including Defendants Jane Doe #1 and John Doe #1, arrived to supervise, manage and control his return to New York City.

**B. Incident During Transportation from Virginia to New York**

22. On August 24, 2021, despite being in the early stages of recovery from his recent below-the-knee amputation, Plaintiff was transported by Defendants Jane Doe #1 and John Doe #1 from Virginia to New York City via a commercial flight operated by Defendants AMERICAN AIRLINES GROUP INC. and AMERICAN EAGLE AIRLINES. Plaintiff required a wheelchair for mobility due to his condition

23. Upon arrival at Richmond International Airport, Plaintiff was handcuffed to his wheelchair and accompanied by the parole officers onto the plane. Plaintiff was not allowed to use his wheelchair, particularly inside the plane, and was not provided with crutches or any other accommodations.

24. Plaintiff was forced to hop on his left leg the entire length of the airplane while holding onto the sides of the aisle for support, which was physically exhausting and painful given his obvious disability. The Plaintiff was forced to be seated in the last row of the plane by the window.

25. In exiting the plane at LaGuardia Airport, Plaintiff was forced to hop down the aisle without any support or accommodation, which caused him to lose his balance, fall, and land on his recently amputated right leg. Plaintiff immediately felt a sharp, internal pain and heard a popping sound from his stump.

26. Plaintiff informed Defendant Jane Doe #1 that he believed he was injured and requested medical assistance. Instead of addressing his concern, Jane Doe #1 dismissed Plaintiff's complaints and request for assistance, stating that there was no visible blood.

27. After the fall, Plaintiff was required to get to a wheelchair by John Doe #1 outside of the airplane and was transported out of the airport. Plaintiff was subsequently placed in a

halfway house in Queens, New York, where he was left in severe pain for over four hours before being taken to Rikers Island.

### C. Detention at Rikers Island and Medical Neglect

28.    Upon his arrival at Rikers Island, Plaintiff was placed in the West Facility, a quarantine area for inmates. Despite his ongoing complaints of severe pain and the recent injury sustained during transport, Plaintiff was not provided with adequate medical care or accommodation.

29.    Over the next several days, Plaintiff's condition worsened. His stump became increasingly red, swollen, and painful, and he repeatedly requested to be taken to a hospital. His requests were either ignored or dismissed by the medical and correctional staff at Rikers Island, Defendant John Does #2 -5, who merely rewrapped his bandage and assured him that there was nothing seriously wrong.

30.    On August 28, 2021, after four days of worsening symptoms, Plaintiff was finally transferred to Bellevue Hospital in New York City, administrated by Defendant New York City Health and Hospital Corporation for further evaluation. By this time, the infection had spread, and his condition had significantly deteriorated.

31.    On August 31, 2021, Plaintiff underwent a third amputation at Bellevue Hospital, this time of his left leg above the knee. The surgeon, Dr. William Johnson, noted that Plaintiff's condition had worsened due to a lack of timely medical intervention. The surgery involved the complete removal of Plaintiff's left leg above the knee due to extensive infection and gangrene.

### D. Hospitalization at Bellevue and Further Complications

32.    Plaintiff remained at Bellevue Hospital from August 28, 2021, to September 10, 2021. During this time, Plaintiff was treated for various severe conditions including wound

6

infections, anemia, and complications arising from uncontrolled diabetes. Medical records indicate that Plaintiff's right leg stump was infected, with purulent drainage and subcutaneous ulcerations containing pockets of air.

33.    Diagnostic imaging performed during this period revealed significant vascular issues, including the occlusion of multiple arteries, which contributed to Plaintiff's poor healing and increased the risk of further complications.

34.    Laboratory results during Plaintiff's hospitalization showed elevated white blood cells, indicating ongoing infection, as well as high C-reactive protein (CRP) levels, a marker of inflammation. Despite these indicators, Plaintiff did not receive timely and adequate medical attention, further exacerbating his condition.

35.    The delay in surgical intervention and appropriate medical treatment resulted in additional pain, suffering, and the permanent loss of Plaintiff's left leg above the knee. The surgical procedure was necessitated by the advanced state of the infection and the risk of systemic infection spreading to other parts of his body.

**E. Discharge and Long-Term Impact**

36.    On September 10, 2021, Plaintiff was discharged from Bellevue Hospital and returned to the custody of the NYC DOC at Rikers Island. His discharge summary notes that he was prescribed several medications, including gabapentin, morphine, oxycodone, and tetracycline for pain management and infection control.

37.    The discharge plan included follow-up appointments at the Vascular Surgery Clinic for staple removal and suture removal, as well as physical therapy for rehabilitation. However, Plaintiff continued to experience severe pain, emotional distress, and physical limitations due to the complications from his delayed and inadequate treatment.

38. Since his discharge, Plaintiff has required ongoing medical care and rehabilitation, and he continues to suffer from the physical and psychological effects of his injuries. The loss of his left leg has significantly impacted his quality of life, causing his health to deteriorate and for him to become dependent on others for basic daily activities and leading to severe depression and anxiety.

## FIRST CAUSE OF ACTION
## AMERICANS WITH DISABILITIES ACT (ADA)

39. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs.

40. The Americans with Disabilities Act (ADA) requires public entities, including correctional facilities, to provide reasonable accommodations to individuals with disabilities to ensure their access to services, programs, and activities.

41. Plaintiff, a double amputee, is a qualified individual with a disability under the ADA. Defendants were aware of Plaintiff's disability and his need for reasonable accommodations, including a wheelchair and proper medical care.

42. Despite this knowledge, Defendants failed to provide appropriate accommodations during Plaintiff's transport from Virginia to New York City, resulting in physical injury and significant pain. Additionally, Defendants failed to provide adequate medical care during Plaintiff's detention at Rikers Island, exacerbating his injuries and leading to further amputation.

43. Defendants' actions and omissions constitute a violation of the ADA, as they denied Plaintiff the benefits of services, programs, and activities that are available to other individuals without disabilities.

## SECOND CAUSE OF ACTION
## FOURTEENTH AMENDMENT
## (DUE PROCESS AND EQUAL PROTECTION)

44.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs.

45.    The Fourteenth Amendment to the United States Constitution guarantees all citizens due process of law and equal protection under the law.

46.    Defendants violated Plaintiff's due process rights by failing to provide him with the necessary medical care and accommodations required for his disability, thereby subjecting him to unnecessary pain, suffering, and further amputation.

47.    During the time when the Plaintiff was extradited from Charlottesville, Virginia to New York City on a commercial flight through his time confined in New York City, the Plaintiff was a pre-trial detainee who was protected by the Fourteenth Amendment of the United States Constitution and relevant caselaw as held in *Case v. Anderson*, 2017 U.S. Dist. LEXIS 137118, 2017 WL 3701863, at *8 (S.D.N.Y. August 25, 2017) (internal quotations and citation omitted) which states, "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement — such as the denial of mental health care — by showing that the officers acted with deliberate indifference to the challenged conditions."

48.    Defendants also violated Plaintiff's right to equal protection by treating him differently from other inmates without disabilities, denying him the reasonable accommodations and medical care to which he was entitled under the ADA and other federal laws.

49.    As a result of Defendants' actions and omissions, Plaintiff suffered significant physical and emotional harm, including the loss of his left leg and severe pain and suffering.

**THIRD CAUSE OF ACTION**
**NEGLIGENT HIRING AND RETENTION**

50.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs.

9

51. Defendants, NEW YORK CITY DEPARTMENT OF CORRECTIONS, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AMERICAN AIRLINES GROUP INC., AMERICAN EAGLE AIRLINES, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, were responsible for hiring their staff, promulgating of their respective organization's policies, and supervising prison staff and/or company employees.

52. Defendants, NEW YORK CITY DEPARTMENT OF CORRECTIONS, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AMERICAN AIRLINES GROUP INC., AMERICAN EAGLE AIRLINES, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, were negligent in retaining and hiring employees who were unfit for their positions, leading to the Plaintiff's injuries.

53. As a result of the negligence of the Defendants, NEW YORK CITY DEPARTMENT OF CORRECTIONS, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AMERICAN AIRLINES GROUP INC., AMERICAN EAGLE AIRLINES, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, in retaining and hiring employees, the Plaintiff suffered severe injuries as a result of the negligence of inadequate employees who failed to provide with the Plaintiff with reasonable accommodations that he needed to avoid injury and subsequently failed to allow the Plaintiff to seek medical attention for his injuries, thereby exacerbating the injuries. The Plaintiff is entitled to compensatory and punitive damages against the Defendants, NEW YORK CITY DEPARTMENT OF CORRECTIONS, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION,

AMERICAN AIRLINES GROUP INC., NEW YORK CITY HEALTH AND

HOSPITALS CORPORATION, for their negligence.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**(DUE PROCESS AND EQUAL PROTECTION)**

54.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs.

55.    The Defendants, jointly and severally, acting with animus and under color of law, without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage to Plaintiff. These actions violated Plaintiff's due process rights and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including the Fourth and Fourteenth Amendments.

**FIFTH CAUSE OF ACTION**
**FAILURE TO INTERVENE**

56.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs.

57.    Defendants had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in their presence. At the times of the incidents, Defendants Jane and John Does were observing and aware of the wrongful acts against Plaintiff but neglected to intervene on Plaintiff's behalf, demonstrating a dereliction of their duty and a depraved indifference to Plaintiff's well-being. Defendants violated Plaintiff's constitutional rights by failing to intercede and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries caused as a result of said failure.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court:

11

a.  That the jury find, and the Court adjudge and decree that Plaintiff shall recover compensatory damages in the sum of $10,000,000.00 plus punitive damages in the sum of $10,000,000.00 against the Defendants, plus $1 against the Defendants in nominal damages, jointly and severally, together with interest;

b.  Grant injunctive relief as the Court deems just and proper;

c.  Award the Plaintiff the costs of this action and attorney's fees; and

d.  Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues and counts in the Complaint herein.

Dated: February 5, 2025

Brooklyn, New York

BY:

_____

EZRA B. GLASER, Esq.

EZRA B. GLASER AND ASSOCIATES

Attorneys for the Plaintiff JESSE ALSTON

3021 Fort Hamilton Parkway, (#1R)

Brooklyn, New York 11218

(212) 385-9300