```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
JESSE ALSTON,

                 Plaintiff,

            - against -

NEW YORK CITY DEPARTMENT OF
CORRECTION, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, AMERICAN
AIRLINES GROUP INC., AMERICAN
EAGLE AIRLINES, NEW YORK CITY
HEALTH AND HOSPITALS
CORPORATION, JANE DOE #1 in her
official capacity, JANE DOE #1
in her individual capacity,
JOHN DOE #1 in his official
capacity, JOHN DOE #1 in his
official capacity, and JOHN
DOES #2-5,

                 Defendants.

-------------------------------X
```

**MEMORANDUM AND ORDER**

24 Civ. 6444 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Jesse Alston ("plaintiff") brings this action against defendants New York City Department of Correction ("DOC"), New York State Department of Corrections and Community Supervision ("DOCCS"), New York City Health and Hospitals Corporation ("HHC"), Jane Doe #1 in her official and individual capacities, John Doe #1 in his official and individual capacities, John Does #2-5, American

Airlines Group Inc., and American Eagle Airlines,[1] seeking monetary damages and alleging that, while being transported to and subsequently held in custody at Rikers Island, he was deprived of medical treatment and accommodations in violation of federal and state law.

Presently before the Court is DOCCS's motion to dismiss plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]  DOCCS contends, inter alia, that: (i) plaintiff's claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and New York common law are barred by Eleventh Amendment sovereign immunity; and (ii) even absent sovereign immunity, plaintiff's claims under Section 1983 fail because DOCCS is not a "person" within the

---

[1]    During an initial teleconference with the parties, the Court sought an explanation as to why American Airlines Group Inc. and American Eagle Airlines had not appeared in this action.  At the Court's request, plaintiff's counsel represented that he would follow up.  The Court acknowledges that plaintiff's counsel filed an affidavit of service from a process server in September 2024 which neither contained the title of the individual served nor a description of the individual's job responsibilities.  ECF No. 15.  However, the absence of any appearance by either American Airlines Group Inc. or American Eagle Airlines raises questions as to whether the process server served an individual authorized to accept service on behalf of those entities.  In any event, there is no indication that plaintiff's counsel pursued his claims against those defendants.  For example, plaintiff never sought a default in the years following the filing of this action in August 2024.  Accordingly, American Airlines Group Inc. and American Eagle Airlines are dismissed, as any further attempt to serve them would be untimely given that more than three years have passed since the events underlying this action occurred.

[2]    HHC and DOC each moved to dismiss plaintiff's Amended Complaint.  ECF Nos. 42, 51.  Separate opinions, also filed today by this Court, address the individual motions filed by HHC and DOC.

meaning of the statute.  For the reasons stated herein, the Court grants DOCCS's motion to dismiss.

## I.    Factual Background[3]

### a. Plaintiff's Travel to Virginia

Plaintiff is formerly incarcerated individual who, after being convicted of offenses including robbery, criminal possession of a weapon, and grand larceny, was incarcerated in New York State prisons for approximately 18 years beginning in 1998.  AC ¶ 13. On May 26, 2016, plaintiff was released from custody and placed on parole by the New York State Division of Parole.  Id. ¶ 14.  While walking on a Brooklyn sidewalk in December 2019, plaintiff, a diabetic, stepped on a nail, resulting in a chronic infection that eventually required the amputation of his right foot in March 2020. Id. ¶ 15.  The infection persisted despite the amputation, and in July 2021, plaintiff traveled to Charlottesville, Virginia to obtain medical treatment.  Id. ¶¶ 16-17.  Plaintiff was admitted to the University Medical Center in Charlottesville on July 31, 2021, where he underwent a second amputation, resulting in the removal of his right leg below the knee.  Id. ¶ 18.

---

[3]    The following facts are drawn from the Amended Complaint, ECF No. 32 ("AC"), and are assumed true for purposes of resolving the instant motion. Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017).

Rather than returning to New York by the same means he had used to travel to Virginia, plaintiff instead contacted DOCCS "and/or a Magistrate Judge" in August 2021 to surrender in connection with a parole violation arising from his failure to notify his parole officer that he had left New York. Id. ¶ 19. Plaintiff waived his right to contest extradition from Virginia to New York. Id. ¶ 20. He was discharged from University Medical Center on August 11, 2021, and detained in a Virginia jail until August 24, 2021, when New York parole officers, defendants Jane Doe #1 and John Doe #1, arrived to facilitate his return to New York. Id. ¶ 21.

### a. Plaintiff's Transport to New York

Jane Doe #1 and John Doe #1 accompanied plaintiff to Richmond International Airport, where he was to be transported to New York on a flight operated by defendants American Airlines Group, Inc. and American Eagle Airlines. Id. ¶ 22. Upon arrival, plaintiff was provided with, and handcuffed to, a wheelchair. Id. ¶ 23. Because he could not use a wheelchair inside the aircraft and was not provided with crutches, plaintiff was required to hop down the aisle to his seat in the last row. Id. ¶ 24. After landing at LaGuardia Airport, plaintiff again traversed the aisle by hopping. Id. ¶ 25. Plaintiff lost his balance, fell, and landed on his

recently amputated right leg.  Id.  He experienced sharp, internal pain and heard a popping sound.  Id.  Plaintiff informed Jane Doe #1 that he believed he was injured and requested medical assistance.  Id. ¶ 26.  Jane Doe #1 stated that she did not see any visible blood on his right leg.  Id.  Upon exiting the aircraft, plaintiff was placed in a wheelchair and transported out of the airport.  Id. ¶ 27.  Plaintiff, still in pain, was transferred to a halfway house in Queens, New York for approximately four hours before being transported to Rikers Island ("Rikers").  Id.

### b. Plaintiff's Detention at Rikers Island

Upon arrival at Rikers, plaintiff complained of severe pain stemming from his fall.  Id. ¶ 28.  At some point over the next four days, plaintiff's recently amputated right leg became increasingly red, swollen, and painful, and he requested to be taken to the hospital.  Id. ¶ 29.  Defendants John Does #2-5, HHC medical personnel serving inmates and pre-trial detainees at Rikers Island, rewrapped his bandages and assured him that no serious issue was present.  Id. ¶¶ 11, 29.  On August 28, 2021, plaintiff was transferred to Bellevue Hospital, one of the hospitals within HHC's network.  Id. ¶ 30.  Three days later, on August 31, 2021, he underwent a third amputation, this time of his left leg, due to "extensive infection and gangrene."  Id. ¶¶ 30-

31.    The surgeon, Dr. William Johnson, allegedly stated that plaintiff's condition worsened due to delayed medical intervention.  Id. ¶ 31.

Plaintiff remained hospitalized until September 10, 2021. Id. ¶ 32.  Diagnostic imaging revealed significant vascular issues, including arterial occlusions that contributed to poor healing. Id. ¶ 33.  Plaintiff was treated for several conditions, including wound infections, anemia, and "complications from uncontrolled diabetes."  Id. ¶ 32.  Laboratory testing showed elevated white blood cell counts and high C-reactive protein levels indicative of infection and inflammation.  Id. ¶ 34.

As alleged, the amputation of plaintiff's left leg was necessitated by advanced infection and the risk of systemic spread. Id. ¶ 35.  Upon discharge, plaintiff was prescribed medications including gabapentin, morphine, oxycodone, and tetracycline.  Id. ¶ 36.  His discharge plan included follow-up care at a vascular surgery clinic and physical therapy.  Id. ¶ 37.  Plaintiff alleges ongoing medical needs, as well as continuing pain, psychological distress, and physical limitations arising from the loss of his left leg.  Id. ¶¶ 37-38.  Plaintiff advances no allegations of any mistreatment following the surgery at Bellevue.

## II.  Procedural Background

Plaintiff filed his original complaint on August 26, 2024. ECF No. 1.  HHC answered on September 24, 2024.  ECF No. 20.  That same day, DOC requested an extension until November 7, 2024, to answer or otherwise respond to plaintiff's complaint, which the Court granted.  ECF Nos. 22, 25.  On September 25, 2024, DOCCS requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint, and DOC made a similar request on November 7, 2024.  ECF Nos. 24, 29.  Plaintiff responded to the requests from DOCCS and DOC on November 13, 2024.  ECF No. 30.  On December 17, 2024, HHC also requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint.  ECF No. 31.

On January 9, 2025, the Court held a teleconference with the parties, permitting DOCCS, DOC, and HHC to make their motions and granting plaintiff leave to file an amended complaint by February 6, 2025.  The Court also directed the parties to propose a briefing schedule in which no more than 60 days would elapse between motions and replies.

Plaintiff filed his Amended Complaint on February 5, 2025, asserting the following causes of action: (i) violations of the Americans with Disabilities Act ("ADA"); (ii) deliberate indifference to his medical needs, in violation of the Fourteenth

Amendment's Due Process and Equal Protection Clauses; (iii) negligent hiring and retention; (iv) violations of his constitutional rights as guaranteed under 42 U.S.C. § 1983, including the Fourth and Fourteenth Amendments; and (v) failure to intervene. ECF No. 32. After the parties failed to agree on a briefing schedule, ECF Nos. 36, 37, the Court set one on February 24, 2025. ECF No. 39. In accordance with that schedule, HHC filed its motion to dismiss, ECF No. 42, along with an accompanying memorandum of law, ECF No. 47 ("HHC Mot."), and declaration in support thereof, ECF No. 43, on March 17, 2025. DOCCS filed its motion to dismiss, ECF No. 48, and accompanying memorandum of law, ECF No. 49 ("DOCCS Mot."), on March 24, 2025. The next day, DOC filed its motion to dismiss, ECF No. 51, and accompanying memorandum of law, ECF No. 53 ("DOC Mot."). Plaintiff opposed the motions filed by DOCCS and DOC on May 6, 2025. ECF Nos. 56 ("Pl. DOCCS Opp."), 57 ("Pl. DOC Opp."). DOCCS and DOC filed reply memoranda in support of their respective motions on May 22, 2025. ECF Nos. 58 ("DOCCS Reply"), 59 ("DOC Reply").

On December 19, 2025, after realizing that plaintiff had never filed an opposition to HHC's motion, originally due in May 2025, the Court directed plaintiff to do by January 6, 2026. ECF No. 62. Plaintiff complied with that direction. ECF No. 64 ("Pl. HHC

-8-

Opp."). HHC filed its reply on January 16, 2026. ECF No. 70 ("HHC Reply").

This opinion addresses only DOCCS's motion.

### III. Legal Standard

#### a. Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) must be granted when a district court lacks the constitutional or statutory power to adjudicate a claim. Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). A plaintiff has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). While the Court "must accept as true all material factual allegations in the complaint," J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

#### b. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555.).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

**DISCUSSION**

DOCCS moves to dismiss plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Before proceeding to the merits of that motion, the Court makes two preliminary observations.  First, the Amended Complaint largely fails to plead claims on a defendant-specific basis.  In particular, the first, second, and fourth causes of action – asserting violations of the ADA, the Fourteenth Amendment, and 42 U.S.C. § 1983 – are directed broadly at "Defendants" and do not reference problematic conduct attributable to any particular defendant.  Second, DOCCS's motion seeks only its own dismissal

-10-

and does not specifically address claims as asserted against unidentified defendants Jane Doe #1 and John Doe #1, alleged to be state parole officers employed by DOCCS.

DOCCS argues that Eleventh Amendment sovereign immunity bars each of the following categories of plaintiff's claims against it: (i) those arising under Section 1983; (ii) those arising under the ADA; and (iii) those arising under New York common law. Accordingly, the Court addresses each category of claim in turn.[4]

## I.    Sovereign Immunity Bars Plaintiff's Section 1983 Claims

Plaintiff's second and fourth causes of action assert claims pursuant to Section 1983 and allege that defendants deprived plaintiff of his federal constitutional rights by denying him medical treatment and accommodations.  AC ¶¶ 44-49, 54-55. Plaintiff's fifth cause of action asserts a failure to intervene claim against all defendants.  Id. ¶¶ 56-57.  DOCCS maintains that

---

[4]    Whether sovereign immunity arguments are properly brought under Rule 12(b)(6) or 12(b)(1) remains unsettled in this Circuit.  See Ripa v. Stony Brook Univ., 808 F. App'x 50, 50 n.1 (2d Cir. 2020) ("Whether Eleventh Amendment immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense has not been decided by the Supreme Court or [the Second Circuit].") (internal citations and quotation marks omitted).  DOCCS invokes Rule 12(b)(1) as the sole ground for dismissal in its notice of motion but also cites Rule 12(b)(6) in the accompanying memorandum. DOCCS Mot. at 5.  Practically, the distinction is without a difference: under either subdivision, the Court considers "only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." Harrison v. New York, 95 F. Supp. 3d 293, 313 n.6 (E.D.N.Y. 2015) (internal citation and quotation marks omitted).

these claims are all barred by Eleventh Amendment immunity.  DOCCS Mot. at 5-8.

The Eleventh Amendment bars suits by individuals against a state or state agency in federal court without that state's consent.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Caruso v. Zugibe, 646 F. App'x 101, 104 (2d Cir. 2016).  The Eleventh Amendment likewise bars suits for damages against state officials acting in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Accordingly, a state may not be sued in federal court unless: (i) it waived its immunity; (ii) Congress has validly abrogated that immunity pursuant to Section 5 of the Fourteenth Amendment; or (iii) a plaintiff seeks prospective injunctive relief against a state official in his or her official capacity for an ongoing constitutional violation.  See Gollump v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009); Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 152 (2d Cir. 2013).

None of those exceptions is applicable here.  New York has not waived its Eleventh Amendment immunity to suit in federal court, and it is well-established that Congress did not abrogate that immunity through Section 1983.  Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977); Will v.

-12-

Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]"); see also Quern v. Jordan, 440 U.S. 332, 338-39 (1979).  As an arm of the state, DOCCS "stands in the same position as the state of New York" and shares New York's immunity. Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 28 n.1 (2d Cir. 1991).

Conceding that he is not entitled to monetary relief on his Section 1983 claims,[5] plaintiff nevertheless attempts to avoid dismissal by invoking the exception for prospective equitable relief.  Plaintiff argues that the Amended Complaint "seeks equitable relief" and that state parole officers "should never again treat a disabled person that is in their custody, in the same manner they treated Plaintiff."  Pl. DOCCS Opp. at 12-14. That argument fails.  The Amended Complaint does not seek any form of prospective injunctive relief.  The word "injunctive" appears only once, in the boilerplate request that the Court "[g]rant injunctive relief as the Court deems just and proper."[6]  AC at 12. The pleading otherwise contains no allegations supporting a

---

[5]    See Pl. DOCCS Opp. at 13 (admitting that "Plaintiff may not be entitled on his non-ADA claims to money damages from the DOCCS[.]").

[6]    The words "injunction," "enjoin," or "equitable" do not appear anywhere in the Amended Complaint.

request for prospective relief, nor does it identify any ongoing violation.  Plaintiff may not cure this glaring deficiency through his opposition brief.  Ciment v. TransUnion, LLC, 2025 WL 307871, at *7 (S.D.N.Y. Jan. 27, 2025) ("[I]t is well-settled that a plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.") (internal quotation marks and citations omitted).

Accordingly, plaintiff's second, fourth, and fifth causes of action against DOCCS, explicitly or implicitly brought pursuant to Section 1983, are barred by the Eleventh Amendment.[7]

## II.  Plaintiff Fails to State a Claim Under the ADA

Plaintiff's first cause of action arises under Title II of the ADA.  AC ¶¶ 39-43.  Plaintiff alleges that despite being aware of his disability, DOCCS failed to provide appropriate accommodations during his transport from Virginia to New York. Id.  DOCCS argues that sovereign immunity bars this claim and that,

---

[7]    The Court notes that Section 1983 does not create substantive rights but provides "only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).  To state a cognizable claim under Section 1983, a plaintiff must allege that (i) a person deprived the plaintiff of a federal right, and (ii) that person acted under color of state law.  Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005).  As a state agency, DOCCS is not a "person" within the meaning of Section 1983 and therefore may not be sued under that statute.  Purnell v. Dep't of Corr. & Cmty. Supervision, 2018 WL 6435901, at *2 (N.D.N.Y. Dec. 7, 2018).  Accordingly, even if DOCCS were not entitled to sovereign immunity, plaintiff's Section 1983 claims against it would nonetheless fail.

-14-

in any event, plaintiff fails to allege facts supporting discriminatory animus or ill will based on plaintiff's disability. DOCCS Mot. at 9-11.  Plaintiff responds that Congress validly abrogated DOCCS's sovereign immunity under the ADA, permitting monetary relief.  Pl. DOCCS Opp. at 7-12.

As discussed, a state (and by extension, DOCCS) cannot be sued in federal court unless the state has waived its immunity or Congress has validly abrogated that immunity.  See, e.g., Gollump, 568 F.3d at 366.  Congress may abrogate a state's sovereign immunity if it seeks to enforce the "substantive guarantees" of the Fourteenth Amendment.  Tennessee v. Lane, 541 U.S. 509, 518 (2004).  With respect to the ADA, the Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  United States v. Georgia, 546 U.S. 151, 159 (2006). Under that framework, the Court considers: (i) which aspects of DOCCS's alleged conduct violate the ADA; (ii) the extent to which that conduct also violates the Fourteenth Amendment; and (iii) insofar as the conduct violates the ADA but not the Fourteenth Amendment, whether Congress's purported abrogation of sovereign

-15-

immunity as to that class of conduct is nevertheless valid.  Id. at 159.

If plaintiff satisfies the first two prongs, the Eleventh Amendment does not bar a claim for monetary damages under the ADA against DOCCS.  If, however, plaintiff alleges ADA violations that do not violate the Fourteenth Amendment, the Court proceeds to the third prong.  See, e.g., Colón v. New York State Dep't of Corr. & Cmty. Supervision, 2017 WL 4157372, at *6 (S.D.N.Y. Sep. 15, 2017) (explaining that a plaintiff must show a violation of the ADA and a violation of the Fourteenth Amendment or satisfaction of the third Georgia prong to overcome sovereign immunity).  Thus, although Eleventh Amendment issues are typically resolved at the outset, where a plaintiff "fails to allege an actionable ADA violation," questions of sovereign immunity are irrelevant and need not be reached.  Id.  The Court therefore turns to the merits of plaintiff's ADA claim against DOCCS.

To state a prima facie ADA discrimination claim, a plaintiff must allege that: (i) the plaintiff is a qualified individual with a disability; (ii) defendant is a public entity subject to the ADA; and (iii) the plaintiff is being excluded from participation in, or being denied the benefits of, a service, program, or activity offered by defendant, or was otherwise discriminated

against by reason of his or her disability.  Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).  To determine whether a plaintiff is a qualified individual with a disability, the ADA defines disability to include, inter alia, "a physical or mental impairment that substantially limits one or more major life activities."  Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021) (citation omitted).  A plaintiff may proceed under theories of intentional discrimination (disparate treatment), disparate impact, or failure to make a reasonable accommodation. Brooklyn Ctr. for Psychotherapy Inc. v. Phila. Indem. Ins. Co., 955 F.3d 305, 311 (2d Cir. 2020).  Under Title II, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public services and public accommodations."  Powell v. Nat'l Bd. Of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004).

As alleged here, when DOCCS became involved in his transport from Virginia to New York, plaintiff was an amputee, clearly and substantially impairing his ability to walk.  AC ¶ 22. Unquestionably, walking constitutes a major life activity, and plaintiff has plausibly alleged the first element of a claim under Title II.  Reeves v. Johnson Controls World Servs., Inc., 140 F.3d

144, 155 (2d. Cir. 1998) (holding that "seeing, hearing, or walking" are treated by Second Circuit precedents as "major life activities per se[.]").   Likewise, it is well-established that DOCCS is a public entity subject to the ADA.   Wright, 831 F.3d at 72.   The Court accordingly focuses on the third element of plaintiff's prima facie case: whether he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendant because of his disability.   Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

The Amended Complaint's ADA theory rests on a single, narrow allegation: that DOCCS, through Jane Doe #1 and John Doe #1, failed to provide plaintiff with a wheelchair or crutches on the flight from Virginia to New York, requiring him to hop up and down the aisle while boarding and deplaning.   AC ¶ 42.   That allegation fails to state a claim under Title II.   To begin, the Amended Complaint contains no allegations that plaintiff was excluded from, denied access to, or otherwise deprived of any "service[], program[], or activit[y]" provided by DOCCS, as required by the ADA.   Wright, 831 F.3d at 72.   Nor does plaintiff allege that he sought to participate in any such service, program, or activity, or that he was otherwise denied access to one by reason of his

disability.   Id.; see also Henrietta D., 331 F.3d at 273-75 (requiring denial of meaningful access to public service).

Instead, plaintiff alleges only that he was not provided a particular assistive service, namely a wheelchair or crutches, during a discrete aspect of his transport.   That allegation, without more, does not plausibly plead exclusion from or denial of any identifiable DOCCS program or service, nor does it support a reasonable inference that any such denial occurred "by reason of" plaintiff's disability.  McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (requiring that exclusion be "by reason of" a disability).   Further, the Amended Complaint does not allege that plaintiff was denied access to a wheelchair or assistive device because of his disability, or that such equipment was removed or withheld for discriminatory reasons.   To the contrary, plaintiff alleges that he used a wheelchair outside the aircraft, both before boarding and after deplaning.   AC ¶¶ 23, 27.   These allegations further undermine any inference of discriminatory exclusion or denial of access within the meaning of the ADA.  Shomo v. Dep't of Corr. & Cmty. Supervision, 2022 WL 1406726, at *13 (S.D.N.Y. May 4, 2022) ("[T]hese claims fail because Plaintiff does not allege

that he was discriminated against <u>because of</u> his disability, as is required by [the ADA].").

Courts routinely dismiss ADA claims premised on alleged deficiencies in the manner in which services were provided, rather than the denial of access to those services, where, as here, plaintiff does not identify any program or activity from which he was excluded.  <u>See, e.g.</u>, <u>Elbert v. New York State Dep't of Corr. Servs.</u>, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010) (distinguishing between inadequate medical treatment and actionable ADA discrimination).  At most, plaintiff's allegations concern the adequacy of accommodations provided during transport, which is not, without more, actionable under Title II.  Accordingly, plaintiff fails to state a claim against DOCCS under the ADA.

### III. Sovereign Immunity Bars Plaintiff's Negligent Hiring and Retention Claim

Plaintiff's third cause of action asserts that DOCCS was negligent in retaining and hiring employees who were unfit for their positions, leading to plaintiff's injuries.  AC ¶¶ 50-53. DOCCS maintains that this claim is likewise barred Eleventh Amendment sovereign immunity.  DOCCS Mot. at 7-8.  Plaintiff does not address this argument in his opposition papers.  In any event, because sovereign immunity "absolutely bars a federal court from reviewing any state law claim . . . against state agencies and

officials," absent waiver or abrogation, plaintiff's negligent hiring and retention claim is dismissed. <u>Roddini v. City University of New York</u>, 2003 WL 435981, at *3 (S.D.N.Y. Feb. 21, 2003).

### IV. Because Plaintiff Cannot Amend His Amended Complaint to Add the Names of Jane Doe #1 and John Doe #1, Any Claims Against Them Are Dismissed

Largely without specifics, the Amended Complaint names Jane Doe #1 and John Doe #1, allegedly state parole officers employed by DOCCS, as defendants in their individual and official capacities. AC at 1; ¶¶ 7-8. In New York, claims under Section 1983 are governed by a three-year statute of limitations. <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 79 (2d Cir. 2015). The misconduct alleged by plaintiff occurred in 2021. AC ¶ 22. Five years later, plaintiff has neither identified nor served the state parole officers who allegedly facilitated his transport from Virginia to New York. Because a failure to "identify and serve John Doe defendants within the statute of limitations is fatal to claims against them," plaintiff's claims against Jane Doe #1 and John Doe #1 are time-barred as a matter of law. <u>Aniades v. New York State Div. of Parole</u>, 2023 WL 4421877, at *13 (S.D.N.Y. July 10, 2023) (citing <u>Barrow v. Wethersfield Police Dep't</u>, 66 F.3d 466, 468 (2d Cir. 1995)).

Leave to amend would be futile. Any second amended complaint naming the Doe defendants would not relate back because plaintiff has not shown that the Doe defendants received notice of the action or knew, or should have known, that the action would have been brought against them but for a mistake concerning identity. See Fed R. Civ. P. 15(c)(1)(C); see also Barrow, 66 F.3d at 468 (holding that lack of knowledge of a defendant's identity, as in case of Doe defendants, is not a "mistake" for purposes of Rule 15). Accordingly, plaintiff's claims against Jane Doe #1 and John Doe #1, to the extent they are asserted in their individual and official capacities, are dismissed.

## CONCLUSION

For the foregoing reasons, DOCCS's motion to dismiss plaintiff's claims is granted. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 48. Further, given that the motions pending at ECF Nos. 42 and 51 will also be terminated, and given that defendants American Airlines Group Inc. and American Eagle Airlines are dismissed, the Clerk of Court is also directed to close this case.

Dated:    March 17, 2026
          New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-22-