```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
JESSE ALSTON,

              Plaintiff,                    MEMORANDUM AND ORDER

         - against –                        24 Civ. 6444 (NRB)

NEW YORK CITY DEPARTMENT OF
CORRECTION, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, AMERICAN
AIRLINES GROUP INC., AMERICAN
EAGLE AIRLINES, NEW YORK CITY
HEALTH AND HOSPITALS
CORPORATION, JANE DOE #1 in her
official capacity, JANE DOE #1
in her individual capacity,
JOHN DOE #1 in his official
capacity, JOHN DOE #1 in his
official capacity, and JOHN
DOES #2-5,

              Defendants.

-------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Jesse Alston ("plaintiff") brings this action against defendants New York City Department of Correction ("DOC"), New York State Department of Corrections and Community Supervision ("DOCCS"), New York City Health and Hospitals Corporation ("HHC"), Jane Doe #1 in her official and individual capacities, John Doe #1 in his official and individual capacities, John Does #2-5, American

Airlines Group Inc., and American Eagle Airlines,[1] seeking monetary damages and alleging that, while being transported to and subsequently held in custody at Rikers Island, he was deprived of medical treatment and accommodations in violation of federal and state law.

Presently before the Court is DOC's motion to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]   DOC contends, inter alia, that: (i) plaintiff's claim under the Americans with Disabilities Act ("ADA") fails because he was not unreasonably excluded by reason of his disability; (ii) plaintiff's constitutional claims fail because he has not demonstrated deliberate indifference or the DOC's personal involvement; (iii) plaintiff does not adequately

---

[1]     During an initial teleconference with the parties, the Court sought an explanation as to why American Airlines Group Inc. and American Eagle Airlines had not appeared in this action.  At the Court's request, plaintiff's counsel represented that he would follow up.  The Court acknowledges that plaintiff's counsel filed an affidavit of service from a process server in September 2024 which neither contained the title of the individual served nor a description of the individual's job responsibilities.  ECF No. 15.  However, the absence of any appearance by either American Airlines Group Inc. or American Eagle Airlines raises questions as to whether the process server served an individual authorized to accept service on behalf of those entities.  In any event, there is no indication that plaintiff's counsel pursued his claims against those defendants.  For example, plaintiff never sought a default in the years following the filing of this action in August 2024.  Accordingly, American Airlines Group Inc. and American Eagle Airlines are dismissed, as any further attempt to serve them would be untimely given that more than three years have passed since the events underlying this action occurred.

[2]     DOCCS and HHC each moved to dismiss plaintiff's Amended Complaint.  ECF Nos. 42, 48.  Separate opinions, also filed today by this Court, address the individual motions filed by DOCCS and HHC.

plead a claim for municipal liability pursuant to 42 U.S.C. § 1983 and Monell; (iv) plaintiff's state law claims are time-barred; and (v) DOC is a non-suable entity.  For the reasons stated herein, the Court grants DOC's motion to dismiss.

## I.    Factual Background[3]

### a. Plaintiff's Travel to Virginia

Plaintiff is a formerly incarcerated individual who, after being convicted of offenses including robbery, criminal possession of a weapon, and grand larceny, was incarcerated in New York state prisons for approximately 18 years beginning in 1998.  AC ¶ 13. On May 26, 2016, plaintiff was released from custody and placed on parole by the New York State Division of Parole.  Id. ¶ 14.  While walking on a Brooklyn sidewalk in December 2019, plaintiff, a diabetic, stepped on a nail, resulting in a chronic infection that eventually required the amputation of his right foot in March 2020. Id. ¶¶ 15, 32.  The infection persisted despite the amputation, and in July 2021, plaintiff traveled to Charlottesville, Virginia to obtain medical treatment.  Id. ¶¶ 16-17.  Plaintiff was admitted to the University Medical Center in Charlottesville on July 31,

---

[3]    The following facts are drawn from the Amended Complaint, ECF No. 32 ("AC"), and are assumed true for purposes of resolving the instant motion. Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017).

2021, where he underwent a second amputation, resulting in the removal of his right leg below the knee.  Id. ¶ 18.

Rather than returning to New York by the same means he had used to travel to Virginia, plaintiff instead contacted DOCCS "and/or a Magistrate Judge" in August 2021 to surrender in connection with a parole violation arising from his failure to notify his parole officer that he had left New York.  Id. ¶ 19. Plaintiff waived his right to contest extradition from Virginia to New York.  Id. ¶ 20.  He was discharged from University Medical Center on August 11, 2021, and detained in a Virginia jail until August 24, 2021, when New York parole officers, defendants Jane Doe #1 and John Doe #1, arrived to facilitate his return to New York.  Id. ¶ 21.

### a. Plaintiff's Transport to New York

Jane Doe #1 and John Doe #1 accompanied plaintiff to Richmond International Airport, where he was to be transported to New York on a flight operated by defendants American Airlines Group, Inc. and American Eagle Airlines.  Id. ¶ 22.  Upon arrival, plaintiff was provided with, and handcuffed to, a wheelchair.  Id. ¶ 23. Because he could not use a wheelchair inside the aircraft and was not provided with crutches, plaintiff was required to hop down the aisle to his seat in the last row.  Id. ¶ 24.  After landing at

LaGuardia Airport, plaintiff again traversed the aisle by hopping. Id. ¶ 25.  Plaintiff lost his balance, fell, and landed on his recently amputated right leg.  Id.  He experienced sharp, internal pain and heard a popping sound.  Id.  Plaintiff informed Jane Doe #1 that he believed he was injured and requested medical assistance.  Id. ¶ 26.  Jane Doe #1 stated that she did not see any visible blood on his right leg.  Id.  Upon exiting the aircraft, plaintiff was placed in a wheelchair and transported out of the airport.  Id. ¶ 27.  Plaintiff, still in pain, was transferred to a halfway house in Queens, New York for approximately four hours before being transported to Rikers Island ("Rikers").  Id.

### b. Plaintiff's Detention at Rikers Island

Upon arrival at Rikers, plaintiff complained of severe pain stemming from his fall.  Id. ¶ 28.  At some point over the next four days, plaintiff's recently amputated right leg became increasingly red, swollen, and painful, and he requested to be taken to the hospital.  Id. ¶ 29.  Defendants John Does #2-5, HHC medical personnel serving inmates and pre-trial detainees at Rikers, rewrapped his bandages and assured him that no serious issue was present.  Id. ¶¶ 11, 29.  On August 28, 2021, plaintiff was transferred to Bellevue Hospital, one of the hospitals within HHC's network.  Id. ¶ 30.  Three days later, on August 31, 2021,

he underwent a third amputation, this time of his left leg, due to "extensive infection and gangrene." Id. ¶¶ 30-31. The surgeon, Dr. William Johnson, allegedly stated that plaintiff's condition worsened due to delayed medical intervention. Id. ¶ 31.

Plaintiff remained hospitalized until September 10, 2021. Id. ¶ 32. Diagnostic imaging revealed significant vascular issues, including arterial occlusions that contributed to poor healing. Id. ¶ 33. Plaintiff was treated for several conditions, including wound infections, anemia, and "complications from uncontrolled diabetes." Id. ¶ 32. Laboratory testing showed elevated white blood cell counts and high C-reactive protein levels indicative of infection and inflammation. Id. ¶ 34.

As alleged, the amputation of plaintiff's left leg was necessitated by advanced infection and the risk of systemic spread. Id. ¶ 35. Upon discharge, plaintiff was prescribed medications including gabapentin, morphine, oxycodone, and tetracycline. Id. ¶ 36. His discharge plan included follow-up care at a vascular surgery clinic and physical therapy. Id. ¶ 37. Plaintiff alleges ongoing medical needs, as well as continuing pain, psychological distress, and physical limitations arising from the loss of his left leg. Id. ¶¶ 37-38. Plaintiff advances no allegations of any mistreatment following the surgery at Bellevue.

## II.  Procedural Background

Plaintiff filed his original complaint on August 26, 2024. ECF No. 1.  HHC answered on September 24, 2024.  ECF No. 20.  That same day, DOC requested an extension until November 7, 2024, to answer or otherwise respond to plaintiff's complaint, which the Court granted.  ECF Nos. 22, 25.  On September 25, 2024, DOCCS requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint, and DOC made a similar request on November 7, 2024.  ECF Nos. 24, 29.  Plaintiff responded to the requests from DOCCS and DOC on November 13, 2024.  ECF No. 30.  On December 17, 2024, HHC also requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint.  ECF No. 31.

On January 9, 2025, the Court held a teleconference with the parties, permitting DOCCS, DOC, and HHC to make their motions and granting plaintiff leave to file an amended complaint by February 6, 2025.  The Court also directed the parties to propose a briefing schedule in which no more than 60 days would elapse between motions and replies.

Plaintiff filed his Amended Complaint on February 5, 2025, asserting the following causes of action: (i) violations of the Americans with Disabilities Act ("ADA"); (ii) deliberate indifference to his medical needs, in violation of the Fourteenth

-7-

Amendment's Due Process and Equal Protection Clauses; (iii) negligent hiring and retention; (iv) violations of his constitutional rights as guaranteed under 42 U.S.C. § 1983, including the Fourth and Fourteenth Amendments; and (v) failure to intervene. ECF No. 32. After the parties failed to agree on a briefing schedule, ECF Nos. 36, 37, the Court set one on February 24, 2025. ECF No. 39. In accordance with that schedule, HHC filed its motion to dismiss, ECF No. 42, along with an accompanying memorandum of law, ECF No. 47 ("HHC Mot."), and declaration in support thereof, ECF No. 43, on March 17, 2025. DOCCS filed its motion to dismiss, ECF No. 48, and accompanying memorandum of law, ECF No. 49 ("DOCCS Mot."), on March 24, 2025. The next day, DOC filed its motion to dismiss, ECF No. 51, and accompanying memorandum of law, ECF No. 53 ("DOC Mot."). Plaintiff opposed the motions filed by DOCCS and DOC on May 6, 2025. ECF Nos. 56 ("Pl. DOCCS Opp."), 57 ("Pl. DOC Opp."). DOCCS and DOC filed reply memoranda in support of their respective motions on May 22, 2025. ECF Nos. 58 ("DOCCS Reply"), 59 ("DOC Reply").

On December 19, 2025, after realizing that plaintiff had never filed an opposition to HHC's motion, originally due in May 2025, the Court directed plaintiff to do so by January 6, 2026. ECF No. 62. Plaintiff complied with that direction. ECF No. 64 ("Pl. HHC

-8-

Opp."). HHC filed its reply on January 16, 2026. ECF No. 70 ("HHC Reply").

This opinion addresses only DOC's motion.

### III. Legal Standard

#### a. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

### DISCUSSION

DOC moves to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before

proceeding to the merits of that motion, the Court makes two preliminary observations. First, the Amended Complaint largely fails to plead claims on a defendant-specific basis. In particular, the first, second, and fourth causes of action – asserting violations of the ADA, the Fourteenth Amendment, and 42 U.S.C. § 1983 – are directed broadly at "Defendants" and do not reference problematic conduct attributable to any specific defendant. The Amended Complaint likewise does not identify any individuals (including Doe defendants) employed by or affiliated with DOC.

Second, as DOC correctly argues, it is well-established that DOC is a non-suable entity. See, e.g., N.Y.C. Charter Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); see also Williams v. New York City, 2005 WL 1084585, at *9 (S.D.N.Y. July 15, 2005) ("[P]laintiff's claims against the DOC must fail because the DOC is a non-suable entity under the New York City Charter."). Accordingly, the claims against DOC must be dismissed. In any event, even if the Court

-10-

construes plaintiff's claims as brought against the City of New York, those claims still fail.

DOC argues that plaintiff has failed to state: (i) a claim under the ADA; (ii) a constitutional claim for deliberate indifference; and (iii) a Monell claim pursuant to 42 U.S.C. § 1983. DOC further contends that plaintiff's state law claims are time-barred. The Court addresses each argument, beginning with plaintiff's constitutional claims.

## I. Plaintiff's Constitutional Claims

Plaintiff's second cause of action asserts claims pursuant to Section 1983 and alleges that defendants deprived plaintiff of his federal constitutional rights by denying him medical treatment. AC ¶¶ 44-49, 54-55. While plaintiff invokes the Fourth[4] and Fourteenth Amendments in his Amended Complaint, id. ¶ 55, both parties address the substantive constitutional claims as asserting deliberate indifference to plaintiff's serious medical needs under

---

[4]    The Amended Complaint includes a lone reference to the Fourth Amendment. AC ¶ 55 ("[Defendants'] actions violated Plaintiff's due process rights and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including the Fourth and Fourteenth Amendments."). The Fourth Amendment is irrelevant to this action. Plaintiff has cited no facts that pertain in any way to "unreasonable searches and seizures," and the Fourth Amendment is not cited to or referenced in any of plaintiff's moving papers. The Court accordingly assumes that this reference was in error and that plaintiff intended to only cite the Fourteenth Amendment.

the Fourteenth Amendment's Due Process Clause.[5]  Plaintiff's fifth cause of action is identified as a "failure to intervene" and alleges that defendants violated plaintiff's constitutional rights by "failing to intercede and prevent the violation[.]"  Id. ¶¶ 56-57.

### a. Prerequisite of Personal Involvement Under Section 1983

A claim arising under 42 U.S.C. § 1983 must allege the personal involvement of any individual defendant in the purported constitutional deprivation.  Raspardo v. Carlone, 770 F.3d 97, 115-16 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant . . .  § 1983 requires individual, personalized liability on the part of each government defendant."); see also Grullon v. City of New Haven, 720 F.3d 133,

---

[5]    Deliberate indifference claims brought by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment, while the Cruel and Unusual Punishments Clause of the Eighth Amendment governs similar claims brought by convicted prisoners.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Haynes v. City of New York, 2020 WL 4926178, at *6 (S.D.N.Y. Aug. 20, 2020).   While the parties assume that plaintiff's claims arise under the Fourteenth Amendment because his detention at Rikers was in connection with an alleged parole violation, AC ¶¶ 14, 19, the Court notes that whether an individual detained for a suspected parole violation is considered a prisoner or pretrial detainee is an "unresolved and difficult question."  Harry v. Suarez, 2012 WL 2053533, at *2 n.3 (S.D.N.Y. June 4, 2012); see also Reinoso-Delacruz v. Ruggerio, 2019 WL 2062434, at *2 (D. Conn. May 9, 2019) ("This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment.").   That distinction is irrelevant here, however, as plaintiff does not assert a cognizable claim under either standard.

138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").

Plaintiff has failed to plausibly allege DOC's personal involvement in any constitutional deprivation. The Amended Complaint contains no factual allegations directed at DOC at all. It identifies no DOC employees, by name, description, or otherwise, and asserts no claims against any DOC-affiliated individual. To the contrary, the Amended Complaint specifically identifies Jane Doe #1 and John Doe #1 as state parole officers employed by DOCCS, and John Does #2-5 as HHC medical personnel who served prisoners and pre-trial detainees at Rikers. AC ¶¶ 7-8, 11. Plaintiff does not identify a single DOC correction officer or employee.

Liberally construed, plaintiff's allegations concern only (i) medical care provided by HHC personnel at Rikers (John Does #2-5), and (ii) accommodations allegedly not provided by DOCCS personnel during plaintiff's transport from Virginia to New York (Jane Doe #1 and John Doe #1). Such allegations, entirely untethered to any conduct by DOC personnel, are insufficient to establish personal involvement as required under Section 1983. Dawson v. City of New York, 2023 WL 6294256, at *2 (S.D.N.Y. Sep.

27, 2023) (dismissing claims against DOC where plaintiff failed to identify any correction officers by name, description, or otherwise); Roundtree v. City of New York, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) (dismissing claims against correction officers where personal involvement was unclear and plaintiff's allegations were general and conclusory). Absent any allegations describing actions taken, or not taken, by DOC or DOC personnel, the Court cannot even begin to conduct a deliberate indifference analysis under the Fourteenth Amendment.

Likewise, the Court is unable to conduct any analysis concerning a potential failure to intervene claim. As a threshold matter, failure to intervene is not a standalone cause of action. Rather, it imposes liability where a government official could have, but did not, intervene in a constitutional violation committed by another government official in his or her presence. Hickey v. City of New York, 2004 WL 2724079, at *16 (S.D.N.Y. Nov. 29, 2004), aff'd, 173 F. App'x 893 (2d Cir. 2006). Stated differently, failure to intervene is a form of individual, rather than municipal, liability, and requires a showing of personal involvement. Rindgen v. Cnty. of Broome, 2025 WL 2772080, at *31 (N.D.N.Y. Sep. 29, 2025) ("Because failure to intervene is a form of individual, rather than municipal, liability, plaintiff's

-14-

failure to intervene claim against the City must be dismissed."); see also Hardy v. Baird, 2016 WL 2745852, at *12 (S.D.N.Y. May 10, 2016) ("Without personal involvement in the alleged violation, [a defendant] cannot be found liable for failing to intervene.").

Here, the Amended Complaint identifies no DOC-affiliated individuals at all, either specifically or generally, and therefore fails at the outset to the plead personal involvement required for a failure to intervene claim.  Nor does it contain any non-conclusory allegation that any DOC personnel were present during, aware of, or had a realistic opportunity to prevent a constitutional violation but failed to do so.  Absent an underlying constitutional violation, there can be no failure to intervene. See, e.g., Turner v. City of New York, 2019 WL 6173701, at *9 (S.D.N.Y. Nov. 19, 2019).

Plaintiff's constitutional claims in the Amended Complaint's second, fourth, and fifth causes of action, as asserted against DOC pursuant to Section 1983, must be dismissed.

## II.  Plaintiff's **Monell** Claim Against DOC

To the extent plaintiff attempts to assert a claim for municipal liability against DOC under 42 U.S.C. § 1983 pursuant to Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978), that claim also fails.  To hold a municipality

liable under Monell, a plaintiff must plead and prove three elements: (i) an official policy or custom which (ii) causes the plaintiff to be subjected to (iii) a denial of a constitutional right. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). In his opposition, plaintiff attempts to amend his Monell claim as solely premised on DOC's purported failure to adequately train its staff under City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), even though he did not include a failure to train claim in the Amended Complaint. See generally Pl. DOC Opp. at 9-11.

At the threshold, plaintiff's Monell claim necessarily fails because "[i]t is well-settled that a Monell claim cannot succeed without an underlying violation, and here there is no constitutional violation." Mastromonaco v. Cnty. of Westchester, 779 F. App'x 49, 51 (2d Cir. 2019); see also DeRaffele v. City of New Rochelle, 2017 WL 2560008, at *6 (S.D.N.Y. 2017) ("It is well established that a Monell claim cannot lie in the absence of an underlying constitutional violation."). It is similarly well-established that "Monell does not provide a separate cause of action . . . it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.

-16-

2006).  As discussed above, plaintiff has not alleged a constitutional violation because he alleges no facts establishing the personal involvement of DOC or any DOC-affiliated individual. Without an "independent constitutional violation," Segal, 459 F.3d at 219, plaintiff's municipal liability claim against DOC based on a purported failure to train must be dismissed.

Even if an underlying claim survived, plaintiff has not plausibly alleged a Monell claim against DOC under a failure-to-train theory, necessitating dismissal on this independent ground. Plaintiff argues for the first time in opposition that the alleged failure to obtain emergency medical treatment reflects a "glaring deficiency in the training of medical personnel at Rikers."  Pl. DOC Opp. at 10.  That belated assertion is insufficient.  The Amended Complaint alleges no facts regarding any official policy, custom, or practice, and pleads no facts concerning DOC's training, supervision, or deliberate indifference to a known need for training.  The Court need not credit conclusory assertions, nor may plaintiff further amend the Amended Complaint through arguments raised for the first time through his opposition. Plaintiff's attempt to advance a failure-to-train theory therefore cannot sustain a Monell claim against DOC.

### III. Plaintiff Fails to State a Claim Under the ADA

Plaintiff's first cause of action arises under Title II of the ADA. AC ¶¶ 39-43. Plaintiff alleges that despite being aware of his disability, DOC failed to provide adequate medical care at Rikers. Id. DOC maintains that claims of inadequate medical care, without more, do not constitute viable ADA claims. DOC Mot. at 6-7.

To state a prima facie ADA discrimination claim, a plaintiff must allege that: (i) the plaintiff is a qualified individual with a disability; (ii) defendant is a public entity subject to the ADA; and (iii) the plaintiff is being excluded from participation in, or being denied the benefits of, a service, program, or activity offered by defendant, or was otherwise discriminated against by reason of his or her disability. Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016). A plaintiff may proceed under theories of intentional discrimination (disparate treatment), disparate impact, or failure to make reasonable accommodation. Brooklyn Ctr. for Psychotherapy Inc. v. Phila. Indem. Ins. Co., 955 F.3d 305, 311 (2d Cir. 2020). Under Title II, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public

-18-

services." Powell v. Nat'l Bd. Of Med. Exam'rs, 364, F.3d 79, 85 (2d Cir. 2004). A plaintiff must also allege that his or her mistreatment was "motivated by either discriminatory animus or ill will due to disability." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001). The animus requirement reflects the purpose of the ADA, which is to "ensure evenhanded treatment between the disabled and the able-bodied." Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998).

DOC does not dispute that, by reason of his amputation, plaintiff is a qualified individual with a disability within the meaning of the ADA. DOC Mot. at 6. While the DOC is a non-suable entity, the City of New York, as a local government, is a public entity subject to suit under Title II of the ADA. See 42 U.S.C. § 12131(1)(A). The Court accordingly focuses on the third element of plaintiff's prima facie case: whether he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendant because of his disability. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

The Amended Complaint's ADA theory rests on the allegation that DOC did not provide plaintiff with adequate medical care. AC ¶ 43. The Amended Complaint contains no allegations that plaintiff

-19-

was excluded from, denied access to, or otherwise deprived of any "service[], program[], or activit[y]" provided by DOC, as required by the ADA.  Wright, 831 F.3d at 72.  Nor does plaintiff allege that he sought to participate in any such service, program, or activity, or that he was otherwise denied access to one by reason of his disability.  Id.; see also Henrietta D., 331 F.3d at 273-75 (requiring an ADA plaintiff to allege a denial of meaningful access to public service).  That failure alone is a fundamental defect warranting dismissal of plaintiff's ADA claim.  Burgess v. Goord, 1999 WL 33458, at *7 (S.D.N.Y. Jan. 26, 1999) (dismissing ADA claim where inmate did not allege that he was prevented from using certain prison services because of his disability).

Further, a "challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services," as here, is not a valid claim under the ADA.  Maccharulo v. New York State Dep't of Corr. Servs., 2010 WL 2899751, at *5 (S.D.N.Y. July 21, 2010).  Allegations of inadequate medical treatment, "even when made by a person with a serious disability," do not state a claim under the ADA.  Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases); see also Freudenberg v. Cnty. of Orange, 2024 WL 4307176, at *8 (S.D.N.Y. Sep. 25, 2024) (holding that "no matter how they are

packaged," a plaintiff's allegations that "go to the substance of the services provided rather than illegal discrimination" cannot state a valid ADA claim).  Here, plaintiff does not allege that he was denied medical services because of his disability; rather, his claim concerns only the adequacy of the medical treatment he received.  That species of claim is not cognizable under the ADA, and to hold otherwise would allow detainees "to litigate in federal court virtually every medical malpractice claim arising in a custodial setting under the auspices of the ADA." Tardif v. City of New York, 991 F.3d 394, 405 (2d Cir. 2021).  Accordingly, plaintiff's ADA claim against DOC is dismissed.

## IV. Plaintiff's Negligent Hiring and Retention Claim Is Time-Barred

Plaintiff's third cause of action asserts that DOC was negligent in retaining and hiring employees who were unfit for their positions, leading to plaintiff's injuries.  AC ¶¶ 50-53. DOC maintains that this claim is subject to, and barred under, the one-year-and-90-day statute of limitations applicable to common law claims asserted against municipalities.  DOC Mot. at 17-18. Specifically, the conduct underlying plaintiff's allegations against DOC occurred in August 2021, but plaintiff did not commence the instant action until 2024.  See AC ¶¶ 28-31; ECF No. 1.  DOC contends that plaintiff failed to (i) file a notice of claim within

90 days of the claim's accrual, and (ii) commence this action within one year and 90 days. Id. Plaintiff responds that his negligent hiring and retention claim is "an aspect of" his Section 1983 claims and is therefore subject to a three-year statute of limitations. Pl. DOC Opp. at 12.

To the extent that plaintiff's negligent hiring and retention claim is duplicative of his Monell claim, it is dismissed for the same reasons as set forth above, supra Section II. Outside the context of a Monell claim premised on a policy of negligent hiring or retention, "a general claim of negligence is not actionable under Section 1983." D.J. by Comfort v. Corning-Painted Post Area Sch. Dist., 722 F. Supp. 3d 148, 166 (W.D.N.Y. 2024); see also Gibson v. Pasta City, 2023 WL 8188431, at *3 (S.D.N.Y. Nov. 27, 2023) ("[N]egligence . . . is not a viable basis for a claim of federal constitutional violation under Section 1983."). Accordingly, to the extent that plaintiff's negligent hiring and retention claim arises under state law, it is barred by New York's one-year-and-90-day statute of limitations for claims against

-22-

municipalities.  N.Y. Gen. Mun. Law § 50-i (McKinney).  Plaintiff's negligent hiring and retention claim is therefore dismissed.

## CONCLUSION

For the foregoing reasons, DOC's motion to dismiss plaintiff's claims is granted.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 51.  Further, given that the motions pending at ECF Nos. 42 and 48 will also be terminated, and given that defendants American Airlines Group Inc. and American Eagle Airlines are dismissed, the Clerk of Court is also directed to close this case.


Dated:    March 17, 2026
          New York, New York

                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE