UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
JESSE ALSTON,

              Plaintiff,

          - against –

NEW YORK CITY DEPARTMENT OF
CORRECTION, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, AMERICAN
AIRLINES GROUP INC., AMERICAN
EAGLE AIRLINES, NEW YORK CITY
HEALTH AND HOSPITALS
CORPORATION, JANE DOE #1 in her
official capacity, JANE DOE #1
in her individual capacity,
JOHN DOE #1 in his official
capacity, JOHN DOE #1 in his
official capacity, and JOHN
DOES #2-5,

             Defendants.

-------------------------------X

**MEMORANDUM AND ORDER**

24 Civ. 6444 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Jesse Alston ("plaintiff") brings this action against defendants New York City Department of Correction ("DOC"), New York State Department of Corrections and Community Supervision ("DOCCS"), New York City Health and Hospitals Corporation ("HHC"), Jane Doe #1 in her official and individual capacities, John Doe #1 in his official and individual capacities, John Does #2-5, American

Airlines Group Inc., and American Eagle Airlines,[1] seeking monetary damages and alleging that, while being transported to and subsequently held in custody at Rikers Island, he was deprived of medical treatment and accommodations in violation of federal and state law.

Presently before the Court is HHC's motion to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  HHC contends, inter alia, that: (i) plaintiff fails to adequately plead a claim under the Americans with Disabilities Act ("ADA"); (ii) plaintiff's constitutional claims fail because he received medical treatment; (iii) plaintiff does not adequately plead a claim for municipal liability pursuant to 42 U.S.C. § 1983 and Monell; and (iv) plaintiff's state law

---

[1]    During an initial teleconference with the parties, the Court sought an explanation as to why American Airlines Group Inc. and American Eagle Airlines had not appeared in this action.  At the Court's request, plaintiff's counsel represented that he would follow up.  The Court acknowledges that plaintiff's counsel filed an affidavit of service from a process server in September 2024 which neither contained the title of the individual served nor a description of the individual's job responsibilities.  ECF No. 15.  However, the absence of any appearance by either American Airlines Group Inc. or American Eagle Airlines raises questions as to whether the process server served an individual authorized to accept service on behalf of those entities.  In any event, there is no indication that plaintiff's counsel pursued his claims against those defendants.  For example, plaintiff never sought a default in the years following the filing of this action in August 2024.  Accordingly, American Airlines Group Inc. and American Eagle Airlines are dismissed, as any further attempt to serve them would be untimely given that more than three years have passed since the events underlying this action occurred.

[2]    DOCCS and DOC each moved to dismiss plaintiff's Amended Complaint.  ECF Nos. 48, 51.  Separate opinions, also filed today by this Court, address the individual motions filed by DOCCS and DOC.

claims are time-barred and inadequately pled.  For the reasons stated herein, the Court grants HHC's motion to dismiss.

### I.    Factual Background[3]

#### a. Plaintiff's Travel to Virginia

Plaintiff is a formerly incarcerated individual who, after being convicted of offenses including robbery, criminal possession of a weapon, and grand larceny, was incarcerated in New York state prisons for approximately 18 years beginning in 1998.  AC ¶ 13. On May 26, 2016, plaintiff was released from custody and placed on parole by the New York State Division of Parole.  Id. ¶ 14.  While walking on a Brooklyn sidewalk in December 2019, plaintiff, a diabetic, stepped on a nail, resulting in a chronic infection that eventually required the amputation of his right foot in March 2020. Id. ¶¶ 15, 32.  The infection persisted despite the amputation, and in July 2021, plaintiff traveled to Charlottesville, Virginia to obtain medical treatment.  Id. ¶¶ 16-17.  Plaintiff was admitted to the University Medical Center in Charlottesville on July 31, 2021, where he underwent a second amputation, resulting in the removal of his right leg below the knee.  Id. ¶ 18.

---

[3]    The following facts are drawn from the Amended Complaint, ECF No. 32 ("AC"), and are assumed true for purposes of resolving the instant motion. Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017).

Rather than returning to New York by the same means he had used to travel to Virginia, plaintiff instead contacted DOCCS "and/or a Magistrate Judge" in August 2021 to surrender in connection with a parole violation arising from his failure to notify his parole officer that he had left New York.  Id. ¶ 19. Plaintiff waived his right to contest extradition from Virginia to New York.  Id. ¶ 20.  He was discharged from University Medical Center on August 11, 2021, and detained in a Virginia jail until August 24, 2021, when New York parole officers, defendants Jane Doe #1 and John Doe #1, arrived to facilitate his return to New York.  Id. ¶ 21.

### a. Plaintiff's Transport to New York

Jane Doe #1 and John Doe #1 accompanied plaintiff to Richmond International Airport, where he was to be transported to New York on a flight operated by defendants American Airlines Group, Inc. and American Eagle Airlines.  Id. ¶ 22.  Upon arrival, plaintiff was provided with, and handcuffed to, a wheelchair.  Id. ¶ 23. Because he could not use a wheelchair inside the aircraft and was not provided with crutches, plaintiff was required to hop down the aisle to his seat in the last row.  Id. ¶ 24.  After landing at LaGuardia Airport, plaintiff again traversed the aisle by hopping. Id. ¶ 25.  Plaintiff lost his balance, fell, and landed on his

-4-

recently amputated right leg.  Id.  He experienced sharp, internal pain and heard a popping sound.  Id.  Plaintiff informed Jane Doe #1 that he believed he was injured and requested medical assistance.  Id. ¶ 26.  Jane Doe #1 stated that she did not see any visible blood on his right leg.  Id.  Upon exiting the aircraft, plaintiff was placed in a wheelchair and transported out of the airport.  Id. ¶ 27.  Plaintiff, still in pain, was transferred to a halfway house in Queens, New York for approximately four hours before being transported to Rikers Island ("Rikers").  Id.

### b. Plaintiff's Detention at Rikers Island

Upon arrival at Rikers, plaintiff complained of severe pain stemming from his fall.  Id. ¶ 28.  At some point over the next four days, plaintiff's recently amputated right leg became increasingly red, swollen, and painful, and he requested to be taken to the hospital.  Id. ¶ 29.  Defendants John Does #2-5, HHC medical personnel serving inmates and pre-trial detainees at Rikers, rewrapped his bandages and assured him that no serious issue was present.  Id. ¶¶ 11, 29.  On August 28, 2021, plaintiff was transferred to Bellevue Hospital ("Bellevue"), one of the hospitals within HHC's network.  Id. ¶ 30.  Three days later, on August 31, 2021, he underwent a third amputation, this time of his left leg, due to "extensive infection and gangrene."  Id. ¶¶ 30-

31.    The surgeon, Dr. William Johnson, allegedly stated that plaintiff's condition worsened due to delayed medical intervention.  Id. ¶ 31.

Plaintiff remained hospitalized until September 10, 2021. Id. ¶ 32.  Diagnostic imaging revealed significant vascular issues, including arterial occlusions that contributed to poor healing. Id. ¶ 33.  Plaintiff was treated for several conditions, including wound infections, anemia, and "complications from uncontrolled diabetes."  Id. ¶ 32.  Laboratory testing showed elevated white blood cell counts and high C-reactive protein levels indicative of infection and inflammation.  Id. ¶ 34.

As alleged, the amputation of plaintiff's left leg was necessitated by advanced infection and the risk of systemic spread. Id. ¶ 35.  Upon discharge, plaintiff was prescribed medications including gabapentin, morphine, oxycodone, and tetracycline.  Id. ¶ 36.  His discharge plan included follow-up care at a vascular surgery clinic and physical therapy.  Id. ¶ 37.  Plaintiff alleges ongoing medical needs, as well as continuing pain, psychological distress, and physical limitations arising from the loss of his left leg.  Id. ¶¶ 37-38.

## II.  Procedural Background

Plaintiff filed his original complaint on August 26, 2024. ECF No. 1.  HHC answered on September 24, 2024.  ECF No. 20.  That same day, DOC requested an extension until November 7, 2024, to answer or otherwise respond to plaintiff's complaint, which the Court granted.  ECF Nos. 22, 25.  On September 25, 2024, DOCCS requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint, and DOC made a similar request on November 7, 2024.  ECF Nos. 24, 29.  Plaintiff responded to the requests from DOCCS and DOC on November 13, 2024.  ECF No. 30.  On December 17, 2024, HHC also requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint.  ECF No. 31.

On January 9, 2025, the Court held a teleconference with the parties, permitting DOCCS, DOC, and HHC to make their motions and granting plaintiff leave to file an amended complaint by February 6, 2025.  The Court also directed the parties to propose a briefing schedule in which no more than 60 days would elapse between motions and replies.

Plaintiff filed his Amended Complaint on February 5, 2025, asserting the following causes of action: (i) violations of the Americans with Disabilities Act ("ADA"); (ii) deliberate indifference to his medical needs, in violation of the Fourteenth

-7-

Amendment's Due Process and Equal Protection Clauses; (iii) negligent hiring and retention; (iv) violations of his constitutional rights as guaranteed under 42 U.S.C. § 1983, including the Fourth and Fourteenth Amendments; and (v) failure to intervene.  ECF No. 32.  After the parties failed to agree on a briefing schedule, ECF Nos. 36, 37, the Court set one on February 24, 2025.  ECF No. 39.  In accordance with that schedule, HHC filed its motion to dismiss, ECF No. 42, along with an accompanying memorandum of law, ECF No. 47 ("HHC Mot."), and declaration in support thereof, ECF No. 43, on March 17, 2025.  DOCCS filed its motion to dismiss, ECF No. 48, and accompanying memorandum of law, ECF No. 49 ("DOCCS Mot."), on March 24, 2025.  The next day, DOC filed its motion to dismiss, ECF No. 51, and accompanying memorandum of law, ECF No. 53 ("DOC Mot.").  Plaintiff opposed the motions filed by DOCCS and DOC on May 6, 2025.  ECF Nos. 56 ("Pl. DOCCS Opp."), 57 ("Pl. DOC Opp.").  DOCCS and DOC filed reply memoranda in support of their respective motions on May 22, 2025.  ECF Nos. 58 ("DOCCS Reply"), 59 ("DOC Reply").

On December 19, 2025, after realizing that plaintiff had never filed an opposition to HHC's motion, originally due in May 2025, the Court directed plaintiff to do so by January 6, 2026.  ECF No. 62.  Plaintiff complied with that direction.  ECF No. 64 ("Pl. HHC

Opp."). HHC filed its reply on January 16, 2026. ECF No. 70 ("HHC Reply").

This opinion addresses only HHC's motion.

### III. Legal Standard

#### a. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555.). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

**DISCUSSION**

HHC moves to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before proceeding to the merits of that motion, the Court notes that the Amended Complaint largely fails to plead claims on a defendant-specific basis. In particular, the first, second, and fourth causes of action – asserting violations of the ADA, the Fourteenth Amendment, and 42 U.S.C. § 1983 – are directed broadly at "Defendants" and do not reference problematic conduct attributable to any particular defendant.

HHC argues that plaintiff has failed to state: (i) a claim under the ADA; (ii) a constitutional claim for deliberate indifference; (iii) a <u>Monell</u> claim pursuant to 42 U.S.C. § 1983; and (iv) a failure to intervene claim. HHC further contends that plaintiff has failed to adequately plead his state law claims and, in any event, such claims are time-barred. The Court addresses each argument, beginning with plaintiff's constitutional claims.

**I.   Plaintiff's Constitutional Claims**

Plaintiff's second cause of action asserts claims pursuant to Section 1983 and alleges that defendants deprived plaintiff of his federal constitutional rights by denying him medical treatment.

-10-

AC ¶¶ 44-49, 54-55.  While plaintiff invokes the Fourth[4] and Fourteenth Amendments in his Amended Complaint, id. ¶ 55, both parties treat the substantive constitutional claims as asserting deliberate indifference to plaintiff's serious medical needs under the Fourteenth Amendment's Due Process Clause.[5]  In its motion, HHC construes these claims as directed solely at the medical care plaintiff received at Bellevue after his transfer from Rikers.  HHC Mot. at 4 ("The Amended Complaint does not contain any allegations regarding the care that plaintiff received at Bellevue Hospital in relation to the alleged violation of due process or

---

[4]    The Amended Complaint includes a lone reference to the Fourth Amendment. AC ¶ 55 ("[Defendants'] actions violated Plaintiff's due process rights and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including the Fourth and Fourteenth Amendments.").  The Fourth Amendment is irrelevant to this action.  Plaintiff has cited no facts that pertain in any way to "unreasonable searches and seizures," U.S. Const. amend. IV, and the Fourth Amendment is not cited to or referenced in any of plaintiff's moving papers.  The Court accordingly assumes that this reference was in error and that plaintiff intended to only cite the Fourteenth Amendment.

[5]    Deliberate indifference claims brought by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment, while the Cruel and Unusual Punishments Clause of the Eighth Amendment governs similar claims brought by convicted prisoners.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Haynes v. City of New York, 2020 WL 4926178, at *6 (S.D.N.Y. Aug. 20, 2020).  While the parties assume that plaintiff's claims arise under the Fourteenth Amendment because his detention at Rikers was in connection with an alleged parole violation, AC ¶¶ 14, 19, the Court notes that whether an individual detained for a suspected parole violation is considered a prisoner or pretrial detainee is an "unresolved and difficult question."  Harry v. Suarez, 2012 WL 2053533, at *2 n.3 (S.D.N.Y. June 4, 2012); see also Reinoso-Delacruz v. Ruggerio, 2019 WL 2062434, at *2 (D. Conn. May 9, 2019) ("This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment.").  That distinction is irrelevant here, however, as plaintiff does not assert a cognizable claim under either standard.

-11-

equal protection."); id. at 5 ("[P]laintiff is not asserting the second cause of action against NYCHHC.").  Proceeding from that premise, HHC argues that plaintiff cannot state a deliberate indifference claim because the Amended Complaint acknowledges that plaintiff received medical treatment at Bellevue.  Id. at 4-5.

This argument rests on a misreading of the Amended Complaint. Plaintiff specifically identifies John Does #2-5 as "medical personnel who, upon information and belief, are employed by the New York City Health and Hospitals Corporation as medical personnel serving inmates and pre-trial detainees on Riker's Island."  AC ¶ 11.  The Amended Complaint further alleges that these individuals "ignored or dismissed" plaintiff's requests to be taken to a hospital and "merely rewrapped his bandage and assured him that there was nothing seriously wrong."  Id. ¶ 29.  Thus, the deliberate indifference allegations concern the medical care that plaintiff allegedly received, or did not receive, from HHC personnel at Rikers, not plaintiff's care at Bellevue.

In any event, plaintiff has failed to state a claim for deliberate indifference to serious medical needs under either the Eighth or Fourteenth Amendments.  To state a claim for deliberate indifference to serious medical needs pursuant to Section 1983, a detainee must satisfy a two-pronged test: (i) the alleged

-12-

deprivation of adequate medical care must be sufficiently serious, Haynes v. City of New York, 2020 WL 4926178, at *7 (S.D.N.Y. Aug. 20, 2020); and (ii) the defendant must act with a "sufficiently culpable state of mind," Davis v. McCready, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017).  Under the Eighth Amendment, the second prong requires a showing of that the official actually knew of and "appreciate[d] the risk to which a prisoner was subjected." Darnell, 849 F.3d at 35.  Under the Fourteenth Amendment, the inquiry is whether the defendant knew or should have known that an excessive risk of harm would result.  Haynes, 2020 WL 4926178, at *7.

Importantly, "not every lapse in medical care is a constitutional wrong," and allegations of negligence generally do not suffice.  See, e.g., Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.").  Therefore, "the fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim[.]"  Brown v. McElroy, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001).  Where a claim rests on an alleged delay in treatment, the focus is on the challenged delay

and the harm it allegedly caused.  Smith v. Carpenter, 316 F.3d 178, 185 (2d. Cir. 2003).

Plaintiff has not made specific allegations rising to the level of deliberate indifference.  As alleged, plaintiff did receive medical attention at Rikers from John Does #2-5: they examined him and rewrapped the bandages on plaintiff's recently amputated right leg.  Cf. Roundtree v. City of New York, 2018 WL 1586473, at *10 (S.D.N.Y. Mar. 28, 2018) ("While [plaintiff] may have complained repeatedly about his [condition], the Complaint fails to allege that Defendants expressly refused to treat him and that his requests for treatment were rejected for an invalid reason or to punish him.").  Four days later, plaintiff was transferred to Bellevue, and, three days after arriving at Bellevue, he underwent an amputation of his left leg.  The Amended Complaint contains no allegations concerning the condition of plaintiff's left leg prior to hospitalization.

Nor does the Amended Complaint plausibly allege the required culpable state of mind.  There are no allegations suggesting that (i) in rewrapping plaintiff's bandages, John Does #2-5 "acted with a sufficiently culpable state of mind," Grimmett v. Corizon Med. Assocs. of New York, 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017), (ii) John Does #2-5 knew or somehow should have known that

their treatment of plaintiff's right leg would impact a subsequent amputation of plaintiff's left leg, or (iii) John Does #2-5 declined to provide plaintiff care for an invalid reason or to punish him.  To the extent that plaintiff is alleging that John Does #2-5 were negligent because they rewrapped plaintiff's bandages and assured him nothing was seriously wrong with his amputated right leg, thus delaying his transfer to Bellevue, this allegation does not support a constitutional claim of deliberate indifference.  Even if plaintiff's allegations were sufficient to suggest negligence, which is doubtful, mere negligence "is insufficient to make out a deliberate indifference claim even under the Fourteenth Amendment[.]"  Grimmett, 2017 WL 2274485, at *5.

Accordingly, plaintiff's constitutional claims are dismissed.[6]  To the extent that plaintiff asserts a claim sounding

---

[6]    Any claims against John Does #2-5 are also time-barred.  In New York, Section 1983 claims are governed by a three-year statute of limitations. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 79 (2d Cir. 2015).  The misconduct alleged here occurred in 2021. AC ¶ 22.  Five years later, plaintiff has neither identified nor served the HHC personnel who allegedly provided inadequate medical care.  The failure to identify and serve Doe defendants within the statute of limitations is "fatal" to claims against them. Aniades v. New York State Div. of Parole, 2023 WL 4421877, at *13 (S.D.N.Y. July 10, 2023) (citation omitted).  Nor would amendment cure this defect.  Any second amended complaint naming the HHC personnel would not relate back because plaintiff has not alleged that John Does #2-5 received notice of this action or knew, or should have known, that the action would have been brought against them but for a mistake concerning identity.  See Fed R. Civ. P. 15(c)(1)(C); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468 (2d Cir. 1995) (holding that lack of knowledge of a defendant's identity, as in the case of Doe defendants, is not a "mistake" for purposes of Rule 15).

-15-

in state-law medical malpractice, the Court declines to exercise supplemental jurisdiction over any potential state law claim.[7] Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC, 414 F. App'x 334, 337 (2d Cir. 2011).

## II.  Plaintiff Fails to State a Claim Under the ADA

Plaintiff's first cause of action arises under Title II of the ADA.  AC ¶¶ 39-43.  Specifically, plaintiff alleges that despite being aware of his disability, HHC medical personnel failed to provide adequate medical care at Rikers.  Id.  HHC maintains that plaintiff's ADA claim is directed towards DOC, rather than HHC, and that in any event, plaintiff has failed to state a claim under the ADA because allegations of inadequate medical care do not constitute viable ADA claims.  HHC Reply at 1-4.

To state a prima facie ADA discrimination claim, a plaintiff must allege that: (i) the plaintiff is a qualified individual with a disability; (ii) defendant is a public entity subject to the ADA; and (iii) the plaintiff is being excluded from participation in, or being denied the benefits of, a service, program, or activity offered by defendant, or was otherwise discriminated

---

[7]    The Court's declination to exercise supplemental jurisdiction should not be understood as a finding that plaintiff states a claim for medical malpractice.

against by reason of his or her disability.  Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).  To determine whether a plaintiff is a qualified individual with a disability, the ADA defines disability to include, inter alia, "a physical or mental impairment that substantially limits one or more major life activities."  Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2001) (citation omitted).  A plaintiff may proceed under theories of intentional discrimination (disparate treatment), disparate impact, or failure to make reasonable accommodation. Brooklyn Ctr. for Psychotherapy Inc. v. Phila. Indem. Ins. Co., 955 F.3d 305, 311 (2d Cir. 2020).

Under Title II, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public services."  Powell v. Nat'l Bd. Of Med. Exam'rs, 364, F.3d 79, 85 (2d Cir. 2004).  A plaintiff must also allege that his or her mistreatment was "motivated by either discriminatory animus or ill will due to disability."  Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001).  The animus requirement reflects the purpose of the ADA, which is to "ensure

-17-

evenhanded treatment between the disabled and the able-bodied."

Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998).

As alleged here, when HHC personnel became involved in plaintiff's treatment at Rikers, he was an amputee, clearly and substantially impairing his ability to walk.   AC ¶ 29. Unquestionably, walking constitutes a major life activity, and plaintiff has plausibly alleged the first element of a claim under Title II.   Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 155 (2d. Cir. 1998) (holding that "seeing, hearing, or walking" are treated by Second Circuit precedents as "major life activities per se[.]").   Likewise, the Court assumes for purposes of this motion that HHC is a public entity subject to the ADA. The Court accordingly focuses on the third element of plaintiff's prima facie case: whether he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by defendant because of his disability.   Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

The Amended Complaint's ADA theory rests on the allegation that HHC did not provide plaintiff with adequate medical care at Rikers.  AC ¶ 42.  The Amended Complaint contains no allegations that plaintiff was excluded from, denied access to, or otherwise

deprived of any "service[], program[], or activit[y]" provided by HHC, as required by the ADA. Wright, 831 F.3d at 72. Nor does plaintiff allege that he sought to participate in any such service, program, or activity, or that he was otherwise denied access to one by reason of his disability. Id.; see also Henrietta D., 331 F.3d at 273-75 (requiring denial of meaningful access to public service). That failure alone is a fundamental defect that warrants dismissal of plaintiff's ADA claim. Burgess v. Goord, 1999 WL 33458, at *7 (S.D.N.Y. Jan. 26, 1999) (dismissing ADA claim where inmate did not allege that he was prevented from using certain prison services because of his disability).

Further, a "challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services," as here, is not a valid claim under the ADA. Maccharulo v. New York State Dep't of Corr. Servs., 2010 WL 2899751, at *4 (S.D.N.Y. July 21, 2010). Indeed, allegations of inadequate medical treatment, "even when made by a person with a serious disability," do not state a claim under the ADA. Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases); see also Freudenberg v. Cnty. of Orange, 2024 WL 4307176, at *8 (S.D.N.Y. Sep. 25, 2024) (holding that "no matter how they are packaged," a plaintiff's allegations that "go to the substance

-19-

of the services provided rather than illegal discrimination" cannot state a valid ADA claim).  Here, plaintiff does not allege that he was denied medical services because of his disability; rather, his claim concerns only the adequacy of the medical treatment he received.  AC ¶ 29 ("[M]edical and correctional staff at Rikers Island, Defendant John Does #2-5, [] merely rewrapped [plaintiff's] bandage and assured him that there was nothing seriously wrong.").  That species of claim is not cognizable under the ADA, and to hold otherwise would allow detainees "to litigate in federal court virtually every medical malpractice claim arising in a custodial setting under the auspices of the ADA."  Tardif v. City of New York, 991 F.3d 394, 405 (2d Cir. 2021).  Accordingly, plaintiff's ADA claim against HHC is dismissed.

### III. Plaintiff's Monell Claim Against HHC

To the extent plaintiff attempts to assert a claim for municipal liability against HHC under 42 U.S.C. § 1983 pursuant to Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978), that claim fails.  To hold a municipality liable under Monell, a plaintiff must plead and prove three elements: (i) an official policy or custom which (ii) causes the plaintiff to be subjected to (iii) a denial of a constitutional right.  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  In his

opposition, plaintiff attempts to amend his Monell claim as solely premised on HHC's purported failure to adequately train its staff under City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), even though he did not include a failure to train claim in the Amended Complaint at all.  See generally Pl. HHC Opp. at 11-13.

At the threshold, plaintiff's Monell claim necessarily fails because "[i]t is well-settled that a Monell claim cannot succeed without an underlying violation, and here there is no constitutional violation."  Mastromonaco v. Cnty. of Westchester, 779 F. App'x 49, 51 (2d Cir. 2019); see also DeRaffele v. City of New Rochelle, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017) ("It is well-established that a Monell claim cannot lie in the absence of an underlying constitutional violation.").  It is similarly well-established that "Monell does not provide a separate cause of action . . . it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  As discussed above, plaintiff has not alleged a constitutional violation because he alleges no facts establishing deliberate indifference by HHC personnel.  Without an "independent constitutional violation," Segal, 459 F.3d at 219, plaintiff's

municipal liability claim against HHC based on a purported failure to train must be dismissed.

Even if an underlying claim survived, plaintiff has not plausibly alleged a Monell claim against HHC under a failure-to-train theory, necessitating dismissal on this independent ground. Plaintiff argues for the first time in opposition that the alleged failure to obtain emergency medical treatment reflects a "deficiency in the training of NYCHHC medical personnel at Rikers Island." Pl. HHC Opp. at 12. That belated assertion is insufficient. The Amended Complaint alleges no facts regarding any official policy, custom, or practice, and pleads no facts concerning HHC's training, supervision, or deliberate indifference to a known need for training. The Court need not credit conclusory assertions, nor may plaintiff further amend the Amended Complaint through arguments raised for the first time through his opposition. Plaintiff's attempt to advance a failure-to-train theory therefore cannot sustain a Monell claim against HHC.

## IV. Plaintiff's Negligent Hiring and Retention Claim Is Time-Barred

Plaintiff's third cause of action asserts that HHC was negligent in retaining and hiring employees who were unfit for their positions, leading to plaintiff's injuries. AC ¶¶ 50-53.

HHC maintains that plaintiff has not alleged that any Bellevue employees or John Does #2-5 were acting outside the scope of their employment, as is required to state a negligent hiring and retention claim.  HHC Mot. at 6.  HHC further argues that this claim is subject to, and barred under, the one-year-and-90-day statute of limitations applicable to common law claims asserted against municipalities.  HHC Mot. at 7.  Specifically, HHC contends that plaintiff failed to commence this action within one year and 90 days of the alleged misconduct.  Id.  Plaintiff responds that his negligent hiring and retention claim is "an aspect of" his Monell claim and is therefore subject to a three-year statute of limitations.  Pl. HHC Opp. at 14.

To the extent that plaintiff's negligent hiring and retention claim is duplicative of his Monell claim, it is dismissed for the same reasons as set forth above, supra Section III.  Outside the context of a Monell claim premised on a policy of negligent hiring or retention, "a general claim of negligence is not actionable under Section 1983."  D.J. by Comfort v. Corning-Painted Post Area Sch. Dist., 722 F. Supp. 3d 148, 166 (W.D.N.Y. 2024); see also Gibson v. Pasta City, 2023 WL 8188431, at *3 (S.D.N.Y. Nov. 27, 2023) ("[N]egligence . . . is not a viable basis for a claim of a federal constitutional violation under Section 1983.").  Further,

the conduct underlying plaintiff's allegations against HHC occurred in August and September 2021, but plaintiff did not commence the instant action until 2024.  See AC ¶¶ 28-31; ECF No. 1.  Accordingly, to the extent that plaintiff's negligent hiring and retention claim arises under state common law, it is barred by New York's one-year-and-90-day statute of limitations for claims against municipalities.  N.Y. Gen. Mun. Law § 50-i (McKinney). Plaintiff's negligent hiring and retention claim is therefore dismissed.[8]

## V.    Plaintiff's Failure to Intervene Claim Against HHC

Plaintiff's fifth cause of action is styled as a "failure to intervene" claim and alleges that defendants violated plaintiff's constitutional rights by "failing to intercede and prevent the violation[.]"  Id. ¶¶ 56-57.  The claim is pleaded in a vague and conclusory manner, and it is not possible to discern whether, or in what capacity, the claim is asserted against HHC or is based on

---

[8]    Plaintiff's negligent hiring and retention claim also fails because the Amended Complaint does not allege that any HHC-affiliated individual was "acting outside the scope of her employment."  Newton v. City of N.Y., 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010) (internal quotation marks omitted).  Further, even if plaintiff could establish that any HHC-affiliated individual was acting outside the scope of his or her employment, the Amended Complaint alleges no facts showing that HHC "knew of its employees' propensity to take the alleged actions causing the injury or should have known the same had its hiring procedures been adequate."  Peterec v. Hilliard, 2013 WL 5178328, at *13 (S.D.N.Y. Sep. 16, 2013).

the conduct of John Does #2-5.  The Amended Complaint "lumps all [defendants] together without articulating specifics about any one [defendant] . . . as if to make Defendants guess who was where at what point in time to intervene."  Roman v. City of Mount Vernon, 2022 WL 2819459, at *15 (S.D.N.Y. July 19, 2022).  Stated differently, plaintiff's allegations do not identify "which . . . Defendant failed to intervene to prevent such violations from occurring."  Clay v. Cnty. Of Clinton, 2012 WL 4485952, at *14 (N.D.N.Y. Sep. 27, 2012); see also Anderson v. City of Mount Vernon, 2024 WL 2158390, at *5 (S.D.N.Y. May 13, 2024) (dismissing failure to intervene claim where complaint contained "one-size-fits-all" allegations).

Here, the Amended Complaint does not contain any detail as to which defendants failed to intervene, which defendants were responsible for the alleged violation, or how they did so.  Further, absent an underlying constitutional violation, there can be no failure to intervene.  See, e.g., Turner v. City of New York, 2019 WL 6173701, at *9 (S.D.N.Y. Nov. 19, 2019).  Accordingly, plaintiff's failure to intervene claim is dismissed.

## CONCLUSION

For the foregoing reasons, HHC's motion to dismiss plaintiff's claims is granted.  The Clerk of Court is respectfully

-25-

directed to terminate the motion pending at ECF No. 42.  Further, given that the motions pending at ECF Nos. 48 and 51 will also be terminated, and given that defendants American Airlines Group Inc. and American Eagle Airlines are dismissed, the Clerk of Court is also directed to close this case.

Dated:    March 17, 2026
          New York, New York

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE